The last case on our docket is Ocwen Loan Servicing, Inc. v. Christopher Michael Marino and Valerie Margaret Marino. This is a big-time monopoly on this one. The case is Ocwen Loan Servicing v. Christopher Marino. Good morning, Your Honors. If it please the Court, Jonathan Fink, Wright, Finley, and Zak, on behalf of Ocwen. The Court indicated in an order that the issue it wanted to address apparently first is the issue of appealability. And just to clarify, is that based upon whether or not we already have a final judgment here? I think that's correct, yes. Very good, Your Honors. Well, actually, whether or not we have jurisdiction based on a final judgment and I think also on whether it's appropriate in light of what the current posture of the case is, so I don't know if that's the same question. I believe it is, Your Honor. I think the focus then is what is the effect of the BAP order to partially remand the case on the sole issue of whether or not the Court had authority to issue punitive damages. And we start off with the fact that the general rule here is that in order issuing a contempt sanction is the final appealable order. And what the BAP did is it affirmed the contempt order. It affirmed the award of sanctions by the bankruptcy judge. What the BAP also did is said the bankruptcy judge erred in stating, I would have awarded punitive damages if I could, but the Ninth Circuit says I cannot. So in order to determine if that is a final appealable order or not, the question is, is that remand on that sole issue, which is one of only one of seven issues here, an order that requires the Bankruptcy Court to engage in any fact-finding? If it does not require fact-finding, then it is not an order that requires the Court to abstain from hearing the rest of the appeal. The cases are quite clear that if there is a contempt order that still leaves open the amount of damages as unspecified, it's still a final appealable order. And that's the Shuffler v. Heritage case this Court decided back in 1983, 720 F. 2nd, 1141, that's cited in our papers. And it seems also clear that we have jurisdiction under 28 U.S.C. Section 1291 to hear appeals from contempt orders for violations of discharge injunctions under Section 524 and 105, at least the case that I found was Budientos v. Wells Fargo Bank. So do you agree with that? Absolutely, Your Honor. All right. So what we have here is the tail wagging the dog. We have a remand to say to the Bankruptcy Court, go ahead, if you want to award punitive damages, you can do so, and here's how. But there's no direction by the BAP you need to engage in fact-finding, nor is there any indication from the Bankruptcy Court that it would have engaged in further fact-finding. The court had the Bankruptcy Court had already held its hearing. It had heard evidence. The only thing was whether or not it was going to award, in addition to the other sanctions it imposed, the $1,000 per violation and the attorney's fees, a punitive damage award. If there is no fact-finding required, and certainly appellees have not identified any fact-finding that would actually be required here, then there is no need to go through the landmark factors. But if we were to go through the landmark factors, which are no piecemeal litigation, judicial efficiency, the role of the Bankruptcy Court as fact-finder, and irreparable harm to one of the parties, those factors would still favor hearing this appeal now. There, as I noted, only one of the seven issues. Sorry. I wanted to know why is that? If it does go back, the bankruptcy judge is going to make some decision, and he or she is going to make recommendations, have holdings. There may be some additional litigation. Isn't that a duplication? We're just going to make a decision now, and it'll go back, and then the bankruptcy judge is going to discuss it, and it's going to come back. Isn't that the factor? Isn't that contrary to the factor that we don't want to have duplication? I don't believe it would be duplication, Your Honor, for two reasons. One, again, there is no fact-finding that's going to be required. Two, we have a situation here where if the court agrees with our position on the merits, it moves out the punitive damage issue. Well, you see, you're making that decision here, but how can we be assured that the bankruptcy panel was wrong when they sent it back because they thought there was going to be more to be done? The bankruptcy court did not send it back for fact-finding, though. The bankruptcy, sorry, Your Honor, you had something to say? Go ahead. Finish your sentence. I apologize, Your Honor. No, no, go ahead. The bankruptcy court was told, go ahead, you can award punitive damages. And the court was prepared to award those damages based upon the evidence it had already heard, only it felt that Ninth Circuit said it could not do so. A purely legal issue, not a factual issue. The determination of these award for, is that for appeal or for what happened in the bankruptcy court? I'm sorry, I'm not following your question, Your Honor. I apologize. Was this the BAP that interposed the order that there was going to be additional penalties to your client? No, the BAP did not impose any additional penalties. It simply said the bankruptcy court could, if it wished, award punitive damages and here's how. Yes. And then remanded it to the bankruptcy court? To decide whether it wanted to award the punitive damages and if so, in what amount. Now, don't you think something potentially is going to happen there that would have to be reviewed on appeal, potentially? Not if the court hears the appeal and decides that the merits favor us. Oh, that's right. If you win. If we win. Yeah. It moots out the punitive damage issue altogether. But the bankruptcy court, the BAP didn't feel that that was a foregone conclusion. It just seems to me we decide this issue now, it comes back to us again, that that interferes with one of the factors we're to look at, efficiency. And counsel, we also have the wrinkle of Taggart changing the standard here. Absolutely. So that the Ninth Circuit standard that was applied is now not the standard. So isn't it likely that we'll be sending it back for analysis of the new standard from the U.S. Supreme Court? That's certainly my hope, Your Honor. I think Taggart, which is a case I noted in a letter to the court I would be raising today, the Supreme Court's decision moots out a lot of what the bankruptcy court decided. The bankruptcy court applied what was in essence a strict liability standard. And having done so, it led down the chain to a series of what we believe to be erroneous rulings by the bankruptcy court. If we send it back to the bankruptcy court, staying this appeal, or dismissing this appeal rather, the bankruptcy court now has the problem of it's made a decision based upon an erroneous standard. Its decision on the punitive damages is not going to reconsider that it had already considered the standard incorrectly. It's going to be based off the fact, well, I've already decided you violated it. And I've already decided that if I could award punitive damages, I would. Now that I'm told I can, I'm going to. So I guess I want to understand your position on Taggart and then also on the punitive damages to kind of see if we can get some clarity here. Certainly, Your Honor. On Taggart, do you think we can decide based on the record whether or not, since Taggart's controlling, whether or not this was appropriate outcome here? Absolutely, Your Honor. All right. You think we can do it based on all the reference in the record and apply the Taggart standard now? Yes, Your Honor. And that we wouldn't send it back to the bankruptcy court to do that in the first instance? I don't think you need to. But if you felt that there were issues that remained under Taggart, whether there was a fair and reasonable belief, it is potentially possible you could send it back for that. But again, to send it back now before that determination is made just repeats the error that, sorry. So on the punitive damages, it looks like the BAT thought that punitive damages could be available as opposed to what the bankruptcy court thought that they weren't available. Exactly. And so the whole question that's being appealed, it seems like to me, and I want to make sure I'm right, is whether or not the BAP is correct on whether or not punitive damages could be made available. And we have to answer that before we send it back? Not if you decide on the merits that there was no basis for imposing the contempt sanction. That, again, moves it out. But if you decide there is some basis, then yes, it would have to go back. But under the correct standard, under the Taggart standard, not under a strict liability view, which is what the bankruptcy judge appears to have adopted. So those seem like two separate, you know, but one option is send it back for the bankruptcy court to decide under Taggart whether this was appropriate or what the outcome should be, basically, correct? That's one option. And I'm just trying to figure out how the punitive damages works here, because it seems like that's an open question that needs to be decided on whether or not the BAP was correct, that sanctions, I mean, that punitive damages is possible here, or possible here. Correct. And that is a purely legal issue, not involving any fact-finding by the court. Okay. At the evidentiary hearing, if I could just ask, on the motion for reconsideration, at the evidentiary hearing, Ocwen's telephone calls to the Marinos were discussed at oral argument and during opening statement, also at Marino's, Ms. Marino's direct examination. And I guess also at Mr. Cain's direct examination and at the closing argument, your expert referred to and testifies to the contents of the call logs. One of my questions here for you is whether or not, why didn't you produce the call logs, because it seems like that would have been the time to produce them is at the evidentiary hearing, right? You were aware of them. They were aware they existed, but the motion did not refer to the calls as being part of what the contempt was based on. The motion solely referred to, and we're including the reply as well, solely referred to the written communications. Yeah, but it looks like Judge Beasley specifically asked you about the call logs. And I don't know if it was you, sorry, I don't remember if it was you down below or not. It was not. Okay. And the attorney said that you could not produce, or your client could not produce the logs because they are in coded format that it is very difficult to interpret. And the expert, your expert, Mr. Paine, reviewed that call log and testified to what was found in that call log. Sorry, Your Honor. Mr. Paine was an Occoquan employee, and I don't believe he was an expert. It looked like, well, who was, he was an employee, not an expert. That's my recollection. Yeah, well, he reviewed the call log and testified to what was found in that call log. So I'm struggling with, if your client was aware of the call logs at the time of the evidence you're hearing, I don't know how this can be considered newly discovered evidence. And why didn't you object to the testimony about the calls? Why didn't you present the call logs? I mean, there's a whole host of questions here on this motion for reconsideration. Sure, Your Honor. And the answer is really quite simple. It wasn't presented at the time because, again, it was not part of the motion. They were talking solely about written communications. However, Mr. Paine's testimony about the call logs was not for the purpose of identifying any calls made to the borrowers. It was for the purpose of identifying the fact that Occoquan had not received calls from the borrowers to tell them, to tell Occoquan to stop communicating. That was the sole purpose of his call, of his testimony, rather. He said that he looked at the logs and there were no incoming calls. He did identify that the log reflects both outgoing and incoming, but that's not the same thing as thinking that the outgoing calls are going to be at issue. You're running out of time, so I want to get to the emotional distress damages question. And I guess my main question is, are the emotional distress damages a form of compensatory damages? The bankruptcy court certainly thought so. There is some authority in both directions, so I think that's an open question. I did want to just point out one more thing on the calls, if I might. The judge arbitrarily decided that there were 100 calls. There was no evidence of that. The only testimony was of one call's substance. Not all calls are going to be violations. Most of the debtors testified to were 20 calls, but there was no testimony as to what their content was. Are there other questions, Your Honor? I know I've got six seconds.  Thank you. Thank you, Your Honors. May it please the court, Christopher Burke and Christina Henry for the Marinos. In terms of jurisdiction- Can you pull the microphone closer to you and speak up, please? Is this better? A little bit. In terms of the jurisdiction, 20 months ago I had filed a motion to dismiss on the fact that this wasn't a final order. In essence, it was to avoid why we're here today. Now, I did look back after the court wanted us to discuss jurisdiction, and looking at Gugliusa, I do not think it changes what I initially put in the motion, that this is not a final order. Now, opposing counsel has said, well, we're just sending it back to decide punitive damages. Well, I can tell you what would happen is the judge is going to say, okay, do a brief on punitive damages, and how do we determine them, and what are the factors? In fact, if we look at the BAPS order, it suggested how to deal with punitive damages. The judge can decide yes or no. The judge can issue findings of fact and send it to the district court, or the judge can just send it to the district court. So obviously, findings of facts are anticipated in any potential punitive damage award. Now, I'm not saying that because I don't want this case decided. My clients are in their 60s. They're not educated. They don't understand this procedure. We filed the motion four years ago. It'll be another two or three years before this is decided. So I'm not saying remand it because I want it necessarily to be remanded, but I don't think the court has jurisdiction based on googly ooza, if I'm saying it right, and the findings of the BAP. Now, if we want to say there's perhaps a discrete issue this court can decide, a discrete issue within this case, perhaps the court can decide two motions. One, my motion to strike the transcript. It's a small issue, but what happened was when they appealed to the BAP, they didn't put in the transcript for the motion to reconsider. And yet, when they appealed to the Ninth Circuit, they snuck it in. So I moved to strike it, and the response was let the merits panel decide it. So the court could rule on that. That has no effect with the remand. Second, the court could rule on the motion to reconsider. The reconsideration has nothing to do with punitive sanctions. So that's a discrete issue. This court can say, well, the motion to reconsider is out. Finally, I did ask for attorney's fees, and without a decision on the punitive damages, perhaps this court can look at the attorney fee issue, but that's a little bit closer call. Why did I ask for attorney's fees? Well, three reasons. Under California 1717, under FRAP 38, and under 105. Now, here's what happened. And just to clarify, it was Mr. Prudent was their person most knowledgeable. It wasn't Mr. Payne. Mr. Payne was their attorney. And just in terms of the phone calls, when the court asked earlier on direct, Mr. Payne, Ocwen's counsel says, did you review any of the transaction history or comment call logs that we discussed earlier? This is their own attorney. Yes. And then he goes on to ask, when you reviewed the call logs, and that's page 647 of the record. But going back to my request for attorney's fees, here's why. They had evidence in their possession. They don't present it. Six months later, a few weeks after the judge rules, they file a motion to reconsider. It's denied because it wasn't newly discovered. Then they appeal that to the BAP, yet they don't put in a transcript. Now, when that gets denied, they appeal to this court and sneak in a transcript. In this court's Lowery case, just striking added material isn't sufficient to deter anybody. And so under FRAP 38, I believe that section of their appeal, the motion to reconsider, is frivolous. Second, California 1717, the mutuality of remedy statute would allow attorney's fees in this type of a situation because this whole matter arose from their mortgage contract. And so as to the actual merits of what possibly could be decided by this panel, it would be my motion to strike, the motion to reconsider, and perhaps the motion for attorney's fees. Well, just for clarity, how about Taggart? Should we decide based on Taggart, or should we send it back to the bank? Well, Taggart's an easier standard that the Ninth Circuit had. The Supreme Court made it easier. And so I don't even see how Taggart helps the other side. So I don't think that's a problem to send it back down, but we're just sending it back down. If we do, it's for the punitive sanctions. The problem is, what if the court says, there's no sanctions? How does it come back up here? Because I'm not going to appeal that. If the court says there's no sanctions, you're not going to reverse that. If the court says there's sanctions, and they appeal it, what if they go to the district court? So now we have a BAP decision and a district court, and then how are we supposed to merge back up here? So procedurally, it's a mess, and that's why initially I moved to dismiss it. Yes, Judge Wallace? We have this Section 105A of the Bankruptcy Code that was followed, correct? Yes. And you agree on your side that that's fine and should be affirmed, right? The damage issue that they, or just that they violated, yes, that they violated the discharge, yes. The court, the Bankruptcy Court, used, based upon Henry Zillog, and nobody disagreed with that. Unfortunately, that's no longer the test. Zillog is no longer good law. Supreme Court's told us so. So how can we affirm what the district, what the Bankruptcy Court did when they're using the wrong test? Don't we have to do something about that? And if we have to, do we have really jurisdiction to do with that? Two things. I think the test did get easier, but you're right. If it's based on a case that's no longer valid, then... The Supreme Court told us it's no longer valid. They put in a new test. Right. And it goes back to whether or not this court has jurisdiction to begin with. And if it doesn't have jurisdiction for the punitive sanctions, even if it wanted to say, I'm going to remand it based on Taggart, I think the fact that it wouldn't have jurisdiction on the punitive sanctions would bleed over into the issue on actual damages. Let me try a theory. I don't say there's anything behind this, except I've been trying to figure out how to unravel this thing. We get an appeal that says they want to appeal the BAP, a BAP decision. And the BAP is not a court. It's a panel. And we have all these rules that are not usually followed or don't have to be followed elsewhere. But it's a different kind of a matter. Now, in addition to that issue, there's another issue in here that we probably do have jurisdiction. Right? Well, I argued on at least two, perhaps three. Perhaps jurisdiction. OK, if we get a case that has, that we have jurisdiction and we don't, we get the jurisdiction of the whole matter. We can't cut it. So why couldn't we say that we have no, that we have jurisdiction to say whether we have jurisdiction? Well, that's what Guglielmo is similar to this case. There was a affirmance, a remand and a reversal. And that's what we had here. They affirmed the damages. They affirmed the motion to reconsider. They reversed punitive and they remanded. So we have the same case. And in Guglielmo, the court said it didn't have jurisdiction. But we have to get somehow, there has to be a way of getting this back down to the lower courts to say they used the wrong test. Supreme Court's told us so. It's there. It's sitting there. And jurisdiction is a problem. And we follow that very carefully. Why wouldn't we have jurisdiction to split an issue and say we have jurisdiction to rule on this, but not on this? I assume the court would, but Guglielmo, again, I go back to that. And it says, unless it's a computation or a mechanical test, the court doesn't have jurisdiction at all. And I know it's frustrating for you. It's frustrating for me and my clients. Yeah. Let me ask you about attorney's fees, because I know you're appealing on the attorney's fees. No, I got attorney's fees separate. That wasn't appealed. I'm requesting attorney's fees for the appeal. Right. Yeah, okay. Correct. Okay. But in order, pursuant to Rule 38, correct? Yes. Okay. Well, that's one of the basis. Okay. And the contract, too. Yes. Thank you. But in order, under Rule 38, you have to show this appeal was frivolous. And I guess, how was this frivolous? Well, I went through the steps. Because it's not decided, I don't think you can rule on that. But the frivolousness is, they attempted to put in, they did a motion. It's the motion to reconsider that's frivolous. The motion to reconsider was done six months after the trial. And they said, hey, we have records we want to put in. The court said, no, you don't. Fine. But then they appeal that to the BAP. And when they appeal, they don't put in a transcript. So as an alternate basis, the BAP said, well, there's no transcript. So we can affirm the bankruptcy court on that. Then they appeal here, and they sneak a transcript in. That's why I'm saying that portion was frivolous. And your other basis, the contract basis? Yes. Can you explain that to me? I'm having trouble with it. Okay. It seems like it's a collateral matter to me, but go ahead. Assuming the court's familiar with Penrod and the cases out of California that say there's a mutuality remedy. If the contract says attorney's fees for one, the other side can get attorney's fees. And so here, the whole basis of this was attempting to collect on the mortgage debt. Now, because of Walls v. Wells Fargo, I cannot sue for fair debt collection under the Fair Debt Collection Practice Act in the Ninth Circuit. My only remedy is bankruptcy court. And in bankruptcy court, I've got to do it as a motion for contempt. And so the fact that they were trying to collect on that mortgage forced me to take the only move I could in bankruptcy court. And that's what the basis of the damages were on how they were attempting to collect post-discharge. And if we look at, there's a case, I think it's out of New York, Relativity Fashion 565-BR-50 at page 57 and 58. But in talking about the California statute, it says, so long as the dispute involves a contract or rises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms, or to determine or enforce a party's rights or duties under the agreement, the dispute is an action on a contract for purposes of Section 1717. That's pretty expansive. And I believe it would pull this in, this type of proceeding. So, Mr. Burke, you mentioned that your clients are not people steeped in the law. You must be having a terrible time explaining to them what the heck is going on in this case. My sympathies to the high school students who are also trying to figure out what the heck are we arguing about here? If you abandoned the punitive damages and just went forward, wouldn't that be a better result for your clients? I did consider that, Your Honor. Are you asking me if I'll abandon it now? I don't want to put you on the spot. You haven't consulted with your clients or anything like that. Right. And I did consider that to just try to end this, but I think this case stands for more than just that, and that's one of the reasons. No, I understand. They were not treated fairly, and that's behind what happened here. But were there really a hundred phone calls? What's the basis in the evidence for that? If we look at page 690 in the record, Ms. Marino testified that she was getting two or three calls a day. I said, for how long? She said, for almost a year or so. That's more than a hundred, right? Right. Right there. And then I tried to narrow it down. Well, 60, a hundred? And she said, yes. Now, here's the thing. They provide a declaration that says 35 calls. Then we show, when you look at their other records, there's another 40 calls. And so you can't even trust their records to say it's anything less, but again, they had those records, and they were in their hand, and they... I'm not disputing that, but I'm just saying the basis for saying there were a hundred phone calls is your question of 60 or a hundred or 200 or, you know, whatever, that's pretty light on... Right. But also if we look at page 824 in the record, Ms. Marino wrote on one of the collection letters, I'm getting calls three to five times a day, call Christopher Burke, this should stop. So we do have some evidence of that. Plus, they're calling and their friend is picking up, and they're asking to collect from the friend. So I don't think a hundred calls is out of the realm of possibility in this case. Thanks, Christopher. Thank you. All right.  Do you want to... One minute. Thank you, Rollins. Just very quickly, he misstated the record on the evidence on the calls. Her testimony was simply there were a lot of calls, no evidence of number. But to turn to the attorney's fees, which is something I had not addressed in mind, the BAP did not find the appeal was frivolous. The fee motion was not limited to the reconsideration motion. It was broader that he contended the entire appeal was frivolous. Again, the BAP did not find so. 1717 does not apply here. It only applies where there's an action on a contract, not letters on a contract. And also, as noted in our papers, Ocwen is not a party to the contract on which he is facing his claim for fees. If there are no other questions, those are the only points I think I needed to raise. Thank you, Mr. Fink and Mr. Burke for your oral argument presentations today. The case of Ocwen Loan Servicing LLC versus Christopher Michael Marino and Valerie Margaret Marino is submitted. That concludes our docket for today. Thank you all very much and we are adjourned. Thank you, Your Honors. All rise.
judges: Wallace, Murguia, Lasnik